IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| Anthony Moore, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| vs. | ) | |
| | ) | |
| Leann A. Bertsch, Robyn Schmalenberger, | ) | |
| Jean Sullivan, Wade Strand, Patrick Ross, | ) | |
| Sean Conway, Mr. Holla, Nurse Kimberly, | ) | |
| Randy Kalis, Brian Jacobson, Nathaniel | ) | |
| Erickson, and Jessica Wilkens, in their | ) | |
| official and individual capacities, | ) | Case No. 1:11-mc-002 |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| Anthony Moore, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| vs. | ) | |
| | ) | |
| Leann A. Bertsch, et. al., | ) | Case No. 1:11-mc-005 |
| | ) | |
| Defendants. | ) | |

Before the court are two PLRA packets from plaintiff Moore, each containing a proposed complaint and application to proceed *in forma pauperis*. While these matters have not been joined, there is substantial overlap, and for purposes of convenience they will be addressed together.

1

## I. BACKGROUND

### A. Moore's litigation history

Moore is an inmate at the North Dakota State Penitentiary ("NDSP") and a serial litigator. Moore has filed numerous actions and appeals (including frequent requests for interim relief) with this court and with other federal district courts, the Courts of Appeal for the Eighth Circuit and the D.C. Circuit, the United States Supreme Court, and the North Dakota state courts.

Since 2009, Moore's federal filings have been subject to the PLRA's "three strikes" provision, codified at 28 U.S.C. § 1915(g). See Moore v. Hoeven, No. 3:08-cv-50 (D.N.D. April 1, 2009); see also Moore v. Bertsch, No. 1:09-cv-027, 2009 WL 2150966, *5 (D.N.D. July 13, 2009). And, beginning in 2010, his filings have been subject to additional court orders governing review of any new filings. In Moore v. Cass County Jail Medical Department, No. 3:09-cv-113 (D.N.D. Jan. 27, 2010), Senior Judge Kornmann ordered the clerk's offices in both the Districts of North Dakota and South Dakota not to file additional complaints from Moore unless they "are signed, pursuant to Federal Rules of Civil Procedure 11, by an attorney admitted to the court, or unless a federal judicial officer has authorized in writing the filing of such pleadings in advance." In a subsequent case, District Judge Viken directed Moore to comply with Judge Kornmann's order in all future cases filed in North Dakota and South Dakota. Moore v. Bertsch, No. 1:10-cv-00053, 2010 WL 2998779, **2-3 (D.N.D. July 27, 2010). In addition, Moore has now been accorded the dubious honor of the United States Supreme Court having ordered that he not be permitted to file any future petitions in noncriminal matters unless he pays the Court's docketing fee as a consequence

of repeated abuse of that Court's process. Moore v. North Dakota, 131 S.Ct. 1505 (Mem) (Order dated Feb. 22, 2011).

A frequent tactic in a number of Moore's more recent filings has been to name as defendants all of the judges in this district as well as other judges who have ruled against him, including in one case all of the judges of the Eighth Circuit. E.g., Moore v. Bertsch, No. 1:10-cv-089 (D.N.D.); Moore v. Bertsch, No. 1:10-cv-00053 (D.N.D.). This resulted in at least three cases being referred to judges in the District of South Dakota before the court started invoking the "rule of necessity" in an attempt to curb this abusive tactic. Another of Moore's tactics has been to file complaints in other districts even though the subject matter relates to his incarceration in North Dakota. E.g., Moore v. Bertsch, No. 11-2692 (D. Minn.); Moore v. Bertsch, No. 1:10-cv-00053 (initially filed in the Southern District of Illinois).

Following the issuance of Judge Viken's order in July 2010, and prior to submission of the two complaints presently before the court for review, this court reviewed three additional complaints from Moore. In each instance, the court ordered the clerk not to file the complaints because Moore had failed to demonstrate that he was under imminent danger of serious physical injury or the complaint failed to state a non-frivolous claim. See Moore v. Bertsch, No. 1:10-cv-089 (D.N.D. Order dated Jan. 6, 2011); Moore v. Bertsch, No. 1:10-cv-082 (D.N.D. Order dated Nov. 24, 2010); Moore v. Bertsch, No. 1:10-cv-074 (Order dated Sept. 24, 2010).

### B. The proposed complaint in No. 1:11-mc-002

In the proposed complaint lodged in No. 1:11-mc-002, Moore maintains that the named defendants (all NDSP or North Dakota Department of Corrections staff) have denied him hot meals,

3

confiscated his personal belongings without cause, and otherwise schemed to keep him confined indefinitely in administrative segregation. Specifically, he asserts:

(1) The North Dakota State Penitentiary employees and officials has placed the plaintiff under imminent danger of serious physical injury on two occasions by withholding the plaintiff's hot meals, out of cell activities, and on objects that are as hard as a book or harder. The first occasion was on Tuesday, February 8, 2011. Whereas the plaintiff was restricted to no hot meals and no out of cell activities. The administrative segregation and disciplinary withholding report was approved and signed and initiated by a Patrick Ross, Jean Sullivan, Robyn Schmalenberger and a nurse Jessica Wilkins . . . . The second occasion was on February 11, 2011, whereupon the plaintiff was restricted to no hot meals, no out of cell activities, and no objects that are as hard as a book or harder. The administrative segregation one disciplinary detention withholding report is dated for February 11, 2011, and approved by a Jean Sullivan, Robyn Schmalenberger, and a nurse Kimberly. . . . As a result of the mentioned above report all of the plaintiff's property was removed out of the cell that he occupied. Thus having no access to any daily necessities, such as soap, toothbrush, toothpaste, deodorant, eyeglasses, contact lenses, and solution, cleaner, case, no towels to wash up or any washcloth to wash the sleep out of the plaintiff's eyes when he wakes up in the morning, no laundry bag to sent soiled clothing out for to be laundered, no stocking cap to wear on head to combat the frigid environment of administrative segregation and the outdoor yard, the plaintiff's clothing was removed such as all allotted state issued undergarments and uniform. The plaintiff's property was inventoried by Wade Strand Mr Holla, Patrick Ross and directed as well as orchestrated by a Sean Conway.

(2) The North Dakota State Penitentiary employees and officials has placed the plaintiff under imminent danger of serious physical injury or physical injury by confiscating the plaintiff's only pair of state issued shoes, and the second laundry bag used to wash the white undergarments in. The shoes and the laundry bag were confiscated and inventoried by a Randy Kalis and a Nathaniel Erickson . . . . The plaintiff has no shoes to wear as foot protection, nor can the plaintiff send any of his dirty clothing to the laundry department to be washed.

(3) The North Dakota State Penitentiary employees and officials has placed the plaintiff under imminent danger of serious physical injury or physical injury by continuous restriction to quarters resulting in the plaintiff not being able to participate in outdoor exercise the lastest imposition was for twenty days by a engineered class B infraction report written by a correctional officer

4

named Randy Kalis. The report was adjudicated by a Wade Strand and
finalized by Sean Conway. The continuous imposition of restriction to
quarters causes pain and suffering in the plaintiff's physique. The lastest
imposition of restriction to quarters was finalized of twenty days. On
February 11, 2011, in the past year that the plaintiff has been on continuous
restriction to quarter for just as the plaintiff is about to complete in tenure of
restriction to quarters another report is invented to carry on the restriction to
quarters scheme.

Docket No. 1 (errors in original).[1] In his prayer for relief he demands an immediate transfer from the NDSP to a prison outside of North Dakota. Id. The PLRA packet also includes a request to proceed *in forma pauperis.*

On February 24, 2011, Moore lodged motions requesting: (1) transport by the United States Marshal to a federal medical center for a physical examination; and (2) the assistance of court-appointed counsel. He also filed an amended complaint, reiterating his earlier claims and further asserting that he has been denied needed medical treatment.

(1) John J. Hagen, Kathleen Bachmeier, Jessica R. Wilkens, and the entire nursing staff has placed the plaintiff under imminent danger of serious physical injury or physical injury by a refusal to remove [a] painful ingrown toenail on the plaintiff's left toe.

(2) John J. Hagen, Kathleen Bachmeier, Jessica R. Wilkens, and the entire nursing staff has placed the plaintiff under imminent danger of serious physical injury or physical injury by a refusal to prescribe aspirin for the excruciating pain and suffering on the plaintiff's neck and spinal column area and throughout his entire physique. The plaintiff is unable to move or get out of the bed without enduring pain and suffering.

(3) John J. Hagen and the entire nursing personal has placed the plaintiff under imminent danger of serious physical injury or physical injury by refusing to

---

[1] Moore attached a copy of an "Administrative Segregation & Disciplinary Detention Withholding Report" to his proposed complaint. The report, signed by Unit Manager Jean Sullivan and Warden Robyn Schmalenberger on February 11, 2011, states that Moore's out-of-cell activities and hot meals were to be suspended until February 12, 2011, at 6:00 a.m. and that objects "as hard as a book or harder"taken from his cell were to be returned by February 22, 2011, at 8:00 a.m. Docket No. 1.

treat a itchy, uncomfortable, spreading fungus on the plaintiff's left foot. The fungus is transmogrified, and, excruciating.

(4)   Randy Kalis and Nathaniel Erickson has placed the plaintiff under imminent danger of serious physical injury or physical injury by confiscating his only pair of state issued black shoes and his laundry bag so the plaintiff cannot send any soiled clothing out to the laundry to be laundered, and the plaintiff has no foot protection for his feet to prevent any contagious deadly, sharp objects from breaking through the skin on the bottom of his unprotected feet. On February 11, 2011, Randy Kalis and Nathaniel Erickson documented confiscating the plaintiff's only pair of shoes and laundry bag . . . . The plaintiff has no shoes to wear if the plaintiff is escorted anywhere outside of the cell that he occupies he is not given any footwear or foot protection to wear.

(5)   Sean Conway, Wade Strand, Mr. Hollins, Patrick Ross, Timothy Seybrant has placed the plaintiff under imminent danger of serious physical injury or physical injury by confiscating all of the plaintiff's property from out of the cell he occupies. The plaintiff has no access or usage of any daily necessities such as a washcloth to wash the sleep from his eyes when wakes up in the morning. He has no access or usage to any eye wear especially his contact lense solution, cleaner, and case to clean and disinfect and store daily his contact lense. The plaintiff has no access or usage of a toothbrush and toothpaste. The plaintiff requires his property to utilize all of the daily necessities contained inside of his property and on the cell . . . .

(6)   Wade Strand, Sean Conway, and a Randy Kalis has placed the plaintiff under imminent danger of serious physical injury or physical injury by imposing a continuous twenty day of restriction to quarters on a class B infraction report adjudicated by Sean Conway on February 11, 2011. The restriction to quarters results in plaintiff not being allowed to participate in daily outdoor exercise, and thus producing pain and suffering in the plaintiff's physique. The plaintiff has been on restriction to quarters another incident report is engineered and more sanctions of restriction to quarters are imposed of the maximum limit of thirty days.

(7)   Jean Sullivan, Robyn Schmalenberger, Kari Strom, Jessica Wilkens, Patrick Ross, Sean Conway has placed the plaintiff under imminent danger of serious physical injury or physical injury by restricting the plaintiff to no hot meals, no out of cell activities, and objects hard or harder than a book in his possession . . . . The plaintiff has no access or usage of his property; the plaintiff cannot shower, and the plaintiff was unable to receive and enjoy a

> hot meal or several occasions; the plaintiff could not participate in a break from restriction to quarters on February 16. 2011.
>
> (8) Robyn Schmalenberger, Stephen Foster, Joseph Joyce, Sean Conway, Linda Leiwer, has placed the plaintiff under imminent danger of serious physical injury or physical injury by recommending and approving of the sanction of sixty days loss of all property . . . . The sixty day loss of all property infringes on the plaintiff's right to daily necessities. The sanctions are over the 30 day limit to be meted out on one staged incident report. When ever the sanction start the plaintiff will have no access to any of his property that he requires to survive and to eke out an existence the sanction of loss of all property , The sanction of loss of all property is unconstitutional and must be struck down and out of the North Dakota Department of Corrections and Rehabilitation Policy.

Docket No. 2. (errors in original). Attached to Moore's proposed amended complaint is a report describing a February 11, 2011, incident involving Moore as well as an inventory of items subsequently removed from Moore's cell.[2]

On March 4, 2011, Moore wrote a letter to the court requesting a telephonic hearing to "discuss and resolve" the issues raised in his amended complaint. See Docket No. 5.

### C. The proposed complaint in No. 1:11-mc-005

In the proposed complaint that is part of the PLRA packet in No. 1:11-mc-005, Moore seeks to sue a number of the NDSP's and North Dakota Department of Corrections' officials and staff, the five sitting justices on the North Dakota Supreme Court, and some or all of the judges of this District. He asserts that he has been placed in imminent danger of physical injury on account of:

(1) filing restrictions imposed upon him by the North Dakota Supreme Court in "case appeal number 20110044;"

---

[2] According to the incident report, Moore threatened to kill Case Manager Sean Conway, told other correctional officers that their wives and children deserved to be raped and murdered, belittled staff, and damaged a number of books in his possession along with the door to his cell. Docket No. 2. The disciplinary committee recommended that Moore receive fifteen days of disciplinary detention, lose all of his property for sixty days, and pay for the damage to the books and cell door. In so doing it was careful to note that Moore had refused to meet with an investigator or appear before the committee. Id.

7

(2) this court's refusal to process and review pleadings submitted by Moore in February and March 2011 (Case No. 1:11-mc-00002);

(3) the issuance of a level-two incident report by NDSP staff against Moore for disobeying a verbal or written order;

(4) the restrictions imposed by NDSP staff in January and February 2011 on Moore's access to out-of-cell activities, hot meals, and personal possessions harder than a book cover;

(5) the confinement of Moore to quarters in February 2011;

(6) the destruction of Moore's personal property;

(7) the confinement of Moore to quarters and the confiscation of Moore's personal property; and

(8) the refusal to surgically repair Moore's deformed pinky finger.

Docket No. 1. He seeks an immediate transfer to a facility outside of North Dakota. He also requests the assistance of court-appointed counsel.

## II. DISCUSSION

### A. Governing law

The "three strikes" provision in 28 U.S.C. § 1915(g) does not prohibit a prisoner from filing a civil action or appeal altogether. Rather, it denies the prisoner the benefit of proceeding *in forma pauperis* in all instances save one: when the prisoner is under imminent danger of serious physical injury at the time of the filing of the complaint or appeal. E.g., Martin v. Shelton, 319 F.3d 1048, 1050 (8th Cir. 2003).

When an inmate claims imminent danger of serious physical injury, the court is not required to blindly accept allegations that are conclusory or formulaic in nature. Moore v. Bertsch, No. 1:10-cv-089, 2010 WL 5376199, *3 (D.N.D. Dec. 20, 2010); see Martin v. Shelton, 319 F.3d 1048, 1050

(8th Cir. 2003); Pennington v. Harris, No. 5:08-cv-00229, 2008 WL 4174826, at *3 (E.D. Ark. Sept. 5, 2008). This is particularly true when an inmate's prior assertions of imminent danger have proved to be grossly overstated or patently false. Moore v. Bertsch, 2010 WL 5376199 at *3; cf. Martin v. Crosby, 219 Fed. Appx. 599, 2007 WL 817586 (8th Cir. 2007) (unpublished *per curiam*); McNeil v. United States, No. C05-1975-JCC, 2006 WL 581081, at *3 (W.D. Wash. 2006).

### B. Moore's prior history of making unfounded complaints

Moore has a long history of filing actions claiming that he is suffering from one malady or another that has placed him at risk of serious bodily injury and/or that his physical condition has deteriorated as result of extended confinement to his cell or in administrative segregation. E.g., Moore v. Bertsch, 2010 WL 5376199 at *3 (detailing history and addressing most recent filings); Moore v. Bertsch, No. 1:05-cv-098; 2007 WL 2410346 (D.N.D. Aug. 21, 2007), aff'd, 293 Fed. Appx. 434, 2008 WL 4307896 (8th Cir. 2008) (complaints of elevated amylase and small pheboliths held to be insignificant and not a serious medical condition warranting invocation of Eighth Amendment protection despite claims to the contrary); Moore v. Schuetzle, 486 F. Supp. 2d 969, 989 (D.N.D. 2007), aff'd as modified by 289 Fed. Appx. 962, 2008 WL 3891506 (8th Cir. 2008) (complaints of pain and atrophy suffered during administrative segregation not sufficient to invoke constitutional protection despite claims to the contrary); Moore v. Schuetzle, 354 F. Supp. 2d 1065 (D.N.D.2005), aff'd, 172 Fed. Appx. 133, 2006 WL 758472 (8th Cir. 2006) (complaints of severe pain resulting from alleged abdominal, gastric, and testicular maladies and a deformed finger held insufficient to support an Eighth Amendment claim). A constant Moore refrain is that he is suffering "excruciating pain" - no matter what the purported cause. In none of the cases, however, has Moore been able to present credible evidence supporting his complaints. In fact, in the cases that were not

disposed of summarily, the court determined not only that there was insufficient evidence to support Moore's allegations, but also that (1) Moore was being afforded medical care for numerous ailments - both real and imagined,[3] and (2) prison officials were not violating his rights in imposing disciplinary confinements and were periodically reviewing the confinements per policies that the court determined were acceptable. See id. Further, in Moore's last case, which was terminated in January 2011, the court scheduled a hearing at the NDSP to assess Moore's claims that his physical condition had deteriorated as result of extended cell confinement and Moore refused to leave his cell and attend the hearing. Moore v. Bertsch, No. 1:10-cv-089, 2010 WL 5376199, *2 (D.N.D Report and Recommendation dated December 20, 2010). Finally, Moore's repeated claims that he suffers "excruciating pain" and that his physical condition has diminished as result of disciplinary confinements to the point where he is a risk of serious bodily injury are belied by his active litigation docket and the sheer volume of his filings - almost all of which are handwritten and many of which go on for pages.

## C. No. 1:11-mc-002

In the proposed amended complaint lodged in No. 1:11-mc-002, Moore again claims he is in imminent danger of serious bodily injury as a result of extended cell confinement and what clearly appears to be the temporary denial of certain items of personal property and "hot meals" for disciplinary reasons. He also claims imminent danger of serious bodily injury as a result of alleged

---

[3] Moore's answer to this evidence has been to label the medical professionals as incompetents or to accuse them of falsifying records or committing other improprieties. See id.; see also Moore v. Bertsch, No. 1:10-cv-00074 (D.N.D. Order dated Sept. 23, 2010) (alleging that a private medical care provider performed a "mock colonoscopy"); Moore v. Cass County Jail Medical Dept., 3:09-cv-113 (D.N.D. Order dated Jan. 1, 2009) (accusation of falsification of results of lab tests performed on a stool sample).

non-treatment of "foot fungus" and an "ingrown toenail," as well as the failure to give him aspirin for general body pain.

Simply put, these allegations are either too conclusory or substantively insufficient to avoid § 1915(g)'s bar - particularly given Moore's prior history. See, e.g., Polanco v. Hopkins, 510 F.3d 152 (2d Cir. 2007) (allegations by prisoner of exposure to mold in the shower, unjust discipline, loss of weight as a result of confinement in a special housing unit, and taking of items of personal property insufficient to establish imminent danger of serious bodily injury); Skillern v. Paul, 202 Fed. Appx. 343, 2006 WL 2826609, at *2 (11th Cir. 2006) (holding that inmate's statements concerning the deprivation of heart medication were vague and failed to establish an imminent danger of serious physical injury; Martin v. Shelton, 319 F .3d 1048, 1050-51 (8th Cir. 2003) (refusing to apply the imminent danger exception when a plaintiff alleged that prison officials made him work outside in extreme weather conditions that did not result in any serious physical injuries); Hardy v. Michigan Dept. of Corrections, No. 1:07-cv-607, 2007 WL 2030106, at *2 (W.D. Mich. July 11, 2007) (court has the discretion to discredit claims of imminent danger that are "clearly baseless"). What Moore's allegations do demonstrate, when reviewed in conjunction with Moore's prior history, is that he "is a seasoned litigant who has read 28 U.S.C. § 1915(g) and is manipulating it to serve his ends." McNeil v. United States, 2006 WL 581081, at n.3.

In addition, while not critical to the conclusion that Moore has failed to make a sufficient showing to avoid § 1915(g)'s bar in this instance, it is also worth noting that, since submitting his proposed pleadings, he has managed to maintain an active litigation docket without any apparent difficulty, including: the tender of another PLRA packet and proposed complaint for consideration in Docket No. 1:11-mc-005; multiple filings with the Eighth Circuit as evidenced by the docket in

this matter and in No. 1:11-mc-005; prosecution an action in the District of Minnesota complaining about many of the same things that are now before the court or have been the subject of prior cases in this District, see Moore v. Bertsch, No. 11-2692, 2011 WL 5863914 (D. Minn. Sept. 22, 2011); and prosecution of an appeal to the North Dakota Supreme Court from a denial of post-conviction relief, see Moore v. State, 2011 ND 179, 803 N.W.2d 834 (Table), 2011 WL 4467108 (N.D. 2011) (unpublished per curiam).

### D. No. 1:11-mc-005

In the proposed complaint lodged in Docket No. 1:11-mc-005, Moore complains about the same matters that are the subject of the proposed complaint and amended complaint in the preceding docket, including this court's failure to process his pleadings in that docket with the speed to which he believes the matters should have been addressed. In addition, he complains about filing restrictions imposed by the North Dakota Supreme Court, additional disciplinary penalties imposed by NDSP officials, and the failure to surgically repair a "deformed pinky finger." For the same reasons as in Docket No. 1:11-mc-002, Moore's allegations of imminent danger of serious bodily injury here are either too conclusory or are substantively insufficient to avoid the "three strikes" bar of § 1915(g). In addition, it should be noted that Moore's complaint over the NDSP's refusal to perform surgery on his "deformed finger" is a recycled one that has been previously denied on the merits. Moore v. Schuetzle, 354 F. Supp. 2d 1065 (D.N.D.2005), *aff'd*, 172 Fed. Appx. 133, 2006 WL 758472 (8th Cir. 2006).

An additional wrinkle with respect to the proposed complaint lodged in Docket No. 1:11-mc-005 is that Moore purports to name as defendants at least the judges in this District who are sitting in Bismarck, but perhaps all of the other judges of the District depending upon how one

interprets the caption. The proposed pleading, however, does not seek relief against any of the judges and it appears his complaint is more one of alleged bias or inaction, rather than attempt to prosecute a substantive claim. Consequently, it is recommended that the proposed pleading not be construed as making any substantive claim against the judges of this District and, in any event, that it would be appropriate to invoke the "rule of necessity" for the reasons the court articulated in <u>Moore v. Bertsch</u>, No. 1:10-cv-082 (D.N.D. Order dated Nov. 24, 2010) (Judge Hovland) and in <u>Moore v. Cass County Jail Medical Dep't.</u>, No. 3:09-cv-00113 (D.N.D. Order filed January 27, 2010) (Judge Kornmann).

## III. CONCLUSION AND RECOMMENDATION

Given the foregoing, and to comply with the outstanding orders of Senior District Judge Kornmann and Judge Viken, it is **RECOMMENDED** that the court issue orders in each of the separate matters instructing the Clerk not to file the complaints and to deny Moore's requests to proceed *in forma pauperis* both before this court and upon any appeal.

### NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to Local Rule 72.1(3)(4), Moore may object to the above recommendations by filing written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken.

Dated this 2nd day of December, 2011.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court